5 F.3d 1522
 72 A.F.T.R.2d 93-6319, 94-1 USTC P 50,084
 POLYCHROME INTERNATIONAL CORPORATION
v.
Rudolph E. KRIGGER, Commissioner of Finance, Eric Dawson,
Commissioner of Economic Development and
Agriculture, Government of the Virgin Islands.
CAMCO INTERNATIONAL, LIMITED
v.
Rudolph E. KRIGGER, Commissioner of Finance, Clement Magras,
Commissioner of Licensing and Consumer Affairs, Derek M.
Hodge, Lieutenant Governor, Eric Dawson, Commissioner of
Economic Development and Agriculture.
Rudolph E. Krigger, Commissioner of Finance, Eric Dawson,
Commissioner of Economic Development and Agriculture,
Clement Magras, Commissioner of Licensing and Consumer
Affairs, Derek M. Hodge, Lieutenant Governor, Appellants in 92-7509.
Polychrome International Corporation; Camco International,
Limited, Appellants in 92-7510.
 Nos. 92-7509, 92-7510.
 United States Court of Appeals,
Third Circuit.
 Argued April 26, 1993.
Decided Sept. 10, 1993.
 
 Joseph M. Erwin (argued), Office of Attorney General of the Virgin Islands, Dept. of Justice, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellants/cross-appellees, Rudolph E. Krigger, Commissioner of Finance, Eric Dawson, Commissioner of Economic Development and Agriculture, Clement Magras, Commissioner of Licensing and Consumer Affairs, Derek M. Hodge, Lieutenant Governor.
 Gustav A. Danielson (argued), Law Offices of Robert L. King, Charlotte Amalie, St. Thomas, U.S. Virgin Islands, for appellees/cross-appellants, Polychrome Intern. Corp.; Camco Intern., Ltd.
 Before: GREENBERG, SCIRICA and GARTH, Circuit Judges.
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 
 1
 In these consolidated class actions, Polychrome International Corporation and Camco International, Ltd. challenge certain Virgin Islands statutes imposing taxes and fees on "Foreign Sales Corporations." Seeking a refund and a permanent injunction against future assessments, they claim the statutes violate the United States Constitution, as well as United States and Virgin Islands law.[1] On cross-motions for summary judgment, the district court granted the Government's motions on all of plaintiffs' claims except one, on which it granted summary judgment for plaintiffs. All parties appeal. We will affirm in part and reverse in part.
 
 I.
 
 2
 The challenged provisions of the Virgin Islands Code were enacted in response to, and in coordination with, a special Subpart of the Internal Revenue Code (IRC) entitled "Taxation of Foreign Sales Corporations," 26 U.S.C. Secs. 921-27 (1988 & Supp.1993). As necessary background, we begin with a brief discussion of the history, purpose, and operation of IRC Secs. 921-27.
 
 A.
 
 3
 In an attempt to rectify trade imbalances, Congress has, since 1972, provided tax incentives for certain corporations engaged in export activities. Originally, Congress established a system of tax deferral for "Domestic International Sales Corporations," or DISCs.[2] Under pressure from signatories to the General Agreement on Tariffs and Trade,[3] Congress supplanted this legislation in 1984 with special provisions for "Foreign Sales Corporations," or FSCs, 26 U.S.C. Secs. 921-27.[4] See Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, 98th Cong., 2d Sess., at 1041-42 (CCH 1985). These provisions allow American companies to exempt part of their export income from taxation, through the use of foreign subsidiaries.
 
 
 4
 A FSC (pronounced "fisk") is a subsidiary of an American corporation, organized under the laws of any qualified foreign country or eligible U.S. possession.[5] Typically, a FSC either buys goods from its American parent for resale (a "buy-sell" FSC) or takes the goods as a resale agent, receiving a commission for any such resale (a "commission" FSC). See generally Boris I. Bittker & James S. Eustice, Federal Income Taxation of Corporations and Shareholders, p 17.14(3) (3d ed. 1987).
 
 
 5
 All FSCs must satisfy certain organizational and operating requirements to qualify for the IRC's partial tax exemption. In terms of organization, FSCs must have no more than 25 shareholders, have no outstanding preferred stock, maintain an office and books of account outside the U.S., have at least one non-U.S.-resident board member, and elect FSC status. IRC Sec. 922(a). FSCs must also perform certain management functions outside the United States. See IRC Secs. 924(b), (c), (d). Its directors' board meetings must comply with the laws of its home jurisdiction, and it must keep its primary bank account outside the United States. See 26 C.F.R. Sec. 1.924(c) (1993). If the FSC satisfies these requirements, a portion of its income is exempted from taxation. See I.R.C. Secs. 921(a), 923, 924; see also 26 C.F.R. Sec. 1.9231T(b)(1)(iii) (1993).[6]
 
 B.
 
 6
 Because FSCs are incorporated abroad, the benefits afforded by the IRC may be reduced or eliminated if FSC-host countries impose stiff taxes on FSC income. See generally Blake A. Bernet, The Foreign Sales Corporation Act: Export Incentive for U.S. Business, 25 Int'l Law 223 (1991). Congress prevented such taxation in U.S. territories, on which it may impose all "needful Rules and Regulations," U.S. Const. art. IV, Sec. 3, cl. 2, by establishing a temporary tax holiday for FSCs incorporated there. Under IRC Sec. 927(e)(5)(A), Congress provided "[n]o tax shall be imposed by any possession of the United States on any foreign trade income derived before January 1, 1987." To encourage territories to extend favorable tax treatment to FSCs, Congress also provided: "[n]othing in any provision of law shall be construed as prohibiting any possession of the United States from exempting from tax" any foreign trade income, interest income, and carrying charges[7] of a FSC. IRC Sec. 927(e)(5)(B).
 
 
 7
 Because FSCs may generate significant revenue, many U.S. possessions and foreign jurisdictions attempted to lure them by creating special tax incentives. See Bernet, supra; see also Walter H. Diamond, Foreign Sales Corporations: Final IRS Regulations and Host Government Incentives xii (1987). The Virgin Islands has been particularly effective in attracting FSCs, see Bernet, supra (82% of FSCs world-wide are incorporated in the U.S. Virgin Islands); Edward E. Thomas, Revenue Letter to Commissioner Wetzler, 91 Tax Notes Int'l 45 (Nov. 6, 1991) (4,000 FSCs, representing 80% of FSCs world-wide, are incorporated in the U.S. Virgin Islands), and its success has been due, in part, to its scheme of FSC taxation. See Carey R. D'Avino, General Explanation of the U.S. Virgin Islands FSC Legislation, 85 Tax Notes Today 1-63 (Jan. 2, 1985) (influx of FSCs to the Virgin Islands resulted from favorable tax treatment).
 
 C.
 
 8
 As Virgin Islands corporations, FSCs would be obligated, in the absence of any special exemptions, to pay income taxes to the Virgin Islands government under the "mirror code" provision, 48 U.S.C. Sec. 1397 (1988), which makes the IRC applicable to all Virgin Islands residents. See Danbury, Inc. v. Olive, 820 F.2d 618, 620 (3d Cir.) ("to satisfy Virgin Islands tax obligations, an individual or corporation in the Virgin Islands pays taxes to the [Virgin Islands Bureau of Revenue] equivalent to taxes an individual or corporation under the same circumstances in the United States would pay to the Internal Revenue Service."), cert. denied, 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987). This provision has been incorporated into, and is the basis of, Virgin Islands income tax law.[8] 33 V.I.C. Sec. 1931(15); see Abramson Enters., Inc. v. Government of Virgin Islands, 994 F.2d 140, 141-42 (3d Cir.1993); HMW Indust., Inc. v. Wheatley, 504 F.2d 146, 150 (3d Cir.1974). Although, generally, the Virgin Islands may not reduce or remit tax liability "in any way, directly or indirectly," see IRC Sec. 934(a), Congress has, as noted above, invited the Virgin Islands to exempt FSC income from taxation. See IRC Sec. 927(e)(5)(B).
 
 
 9
 Under the aegis of Sec. 927(e)(5)(B), the Virgin Islands legislature has created a special Chapter of its Corporations and Associations Law, containing tax exemptions for FSCs. See 13 V.I.C. Secs. 773-78 (Supp.1990). By its express terms, "[t]he benefits granted under this chapter ... apply only to [a] FSC incorporated in the Virgin Islands." 13 V.I.C. Sec. 771(1).
 
 
 10
 Under these provisions, Virgin Islands FSCs, and their shareholders, are exempt from several generally applicable income and property taxes. For example, no taxes are payable on foreign trade income,[9] investment income, and carrying charges[10] until January 1, 1997. 13 V.I.C. Sec. 773. Although other companies must pay a gross receipts tax on apportioned gross receipts from the sale or disposition of property (33 V.I.C. Secs. 41, 42), FSCs are exempt. 13 V.I.C. Sec. 774. Moreover, although U.S. citizens receiving distributions from Virgin Islands companies are ordinarily taxed on those distributions (26 U.S.C. Secs. 871(a)(1), 881), the Virgin Islands FSC provisions exempt U.S. residents, citizens, and companies from taxes on shareholder distributions. 13 V.I.C. Sec. 777.[11]
 
 
 11
 The Virgin Islands Code also contains exemptions for FSC-held property. Import property is exempt from customs duties if the FSC intends to reexport it. 13 V.I.C. Sec. 776. FSCs are exempt from payment of excise taxes (33 V.I.C. Sec. 42) on all export property, 13 V.I.C. Sec. 775, and customs duties, which are ordinarily payable under 33 V.I.C. Sec. 525. 13 V.I.C. Sec. 776.
 
 
 12
 In order to assure FSCs that after their incorporation in the Virgin Islands these exemptions would remain inviolate, the legislature directed the Office of the Lieutenant Governor to enter a contract with every FSC upon request. 13 V.I.C. Sec. 780. The contract must specify "that the benefits of this chapter as they exist on [their] effective date ... shall be and remain available to said FSC, and shall not be reduced, until at least January 1, 1997...." Id. The contract must also provide "that the Government shall not adopt any legislation impairing or limiting the obligation of such contract." Id. As a further assurance to FSCs, Sec. 780 requires the Lieutenant Governor to enter the contract "within thirty (30) days of a request by the FSC to do so...." Id.
 
 
 13
 The Virgin Islands legislature did not, however, exempt FSCs from all taxes and fees. FSCs must pay a fee for filing articles of incorporation, as well as annual licensing fees and franchise taxes. These assessments are at the heart of this appeal.
 
 D.
 
 14
 Under 13 V.I.C. Sec. 431(a)(1), FSCs pay a $400 fee for filing articles of incorporation.[12] If a company incorporates and later elects FSC status, it pays a $500 penalty. Id.[13] Moreover, an annual license fee is "levied upon all persons and associations engaged in [ ] designated businesses" under 27 V.I.C. Sec. 302.[14] FSCs pay $100 annually.
 
 
 15
 As all Virgin Islands corporations, FSCs pay an annual franchise tax. Non-FSC corporations pay on the amount of "capital stock used in conducting business in the Virgin Islands." 13 V.I.C. Sec. 531(a). The tax is assessed at $1.50 for each thousand dollars of stock, with a $100 minimum. FSC franchise taxes, however, are calculated with reference to the amount of their "non-Virgin Islands trading gross receipts."
 
 
 16
 As defined by statute, "Non-Virgin Islands trading gross receipts" means
 
 
 17
 the gross receipts of any FSC which are:
 
 
 18
 (1) from the sale, exchange, or other disposition of non-Virgin Islands export property for direct use, consumption, or disposition outside the Virgin Islands;
 
 
 19
 (2) from the lease or rental of non-Virgin Islands export property for use by the lessee outside the Virgin Islands;
 
 
 20
 (3) for services which are related and subsidiary to:
 
 
 21
 (A) any sale, exchange, or other disposition of non-Virgin Islands export property by any such corporation;
 
 
 22
 (B) any lease or rental of non-Virgin Islands export property for use by the lessee outside the Virgin Islands;
 
 
 23
 (4) for engineering or architectural services for construction projects located (or proposed to be located) outside the Virgin Islands; or
 
 
 24
 (5) for the performance of managerial services for an unrelated FSC in furtherance of the production of non-Virgin Islands trading gross receipts as described in items (1), (2), or (3) of this definition; provided that item (5) shall not apply to a FSC for any taxable year unless at least fifty percent (50%) of its gross receipts for such taxable year are derived from activities described in items (1), (2), or (3) of this definition.
 
 
 25
 13 V.I.C. Sec. 770; see also 13 V.I.Regs. Sec. 770-1(i).
 
 
 26
 Thus, in calculating its franchise tax liability for a given year, a FSC must determine its non-Virgin Islands trading gross receipts under Sec. 770 for the taxable year and look to the tax table in Secs. 531b(b) and 531c(b). Under Sec. 531b(b), "small FSCs"[15] pay a $400 franchise tax if it has $2 million or less in non-Virgin Islands trading gross receipts and $900 if it has between $2 and $5 million. 13 V.I.C. Sec. 531b(b). Other FSCs pay franchise taxes as follows:
 
 
 27
 13 V.I.C. Sec. 531c.
 
 
 
 These scheduled rates do not apply to FSCs in their first year of incorporation. First-year FSCs pay standard minimum rates: small FSCs pay $400, 13 V.I.C. Sec. 531b(a), and other FSCs pay $1,000, 13 V.I.C. Sec. 531 c(a). Moreover, in any year, a FSC can reduce its franchise-tax liability if it pays wages to Virgin Islands residents during the year. See 13 V.I.C. Sec. 531d. Section 531d grants a dollar-for-dollar reduction of franchise-tax liability, amounting to as much as 50% of the FSC's applicable franchise tax, for payment of wages.
 E.
 As noted above, some FSCs operate as a commission agent. A commission FSC receives goods from their parent company as a consignee and earns commissions on each sale. Because commission FSCs do not realize gross receipts on such sales (the receipts belong to their parent, for which they serve as agent), they could be effectively exempted from paying franchise taxes except on the relatively small amount of their commission.
 In recognition of this situation, the Director of Revenue for the Virgin Islands promulgated a regulation--13 V.I.Regs. Sec. 530-3(a)[16]--pursuant to 13 V.I.C. Sec. 781: "[f]or the purpose of calculating the franchise tax liability of a commission FSC, non-Virgin Islands trading gross receipts shall include receipts generated by export transactions in which such FSC acts as a commission agent." 13 V.I.Regs. Sec. 530-3(a).
 F.
 Plaintiffs Polychrome and Camco represent a class of buy-sell and commission FSCs incorporated in the Virgin Islands. After paying fees and taxes in 1985 and 1986, plaintiffs filed separate actions challenging the filing, licensing, and franchise fee provisions of the Virgin Islands Code. Plaintiffs claim these provisions violate the Equal Protection, Due Process, and Commerce Clauses of the U.S. Constitution (Polychrome Complaint, count I; Camco Complaint, counts I, II, and III). They also claim the franchise taxes are invalid under the U.S. law (Polychrome Complaint, count II; Camco Complaint, count IV) and that Regulation 530-3 is invalid under Virgin Islands Law (Polychrome Complaint, count III; Camco Complaint, count V).
 The district court consolidated the cases, and the parties filed summary judgment motions. The court granted the government's motion for summary judgment on all counts. On plaintiffs' motion for reconsideration, the court vacated its prior judgment and granted summary judgment to the government on all counts except for count III of the Polychrome complaint and count V of the Camco complaint. Granting summary judgment to plaintiffs on these counts, the court held that administrative regulation Sec. 530-3 was contrary to Virgin Islands law.[17] The parties now appeal.[18]
 II.
 We first address the government's claim that plaintiffs lack standing to challenge the tax and fee provisions. The standing problem arises, according to the government, because plaintiffs voluntarily paid the filing, licensing, and franchise-tax assessments. The government contends that, at common law, one can recover a tax only if paid "under protest or duress." See Philip M. Tatarowicz, Right to a Refund for Unconstitutionally Discriminatory State Taxes and Other Controversial State Tax Issues Under the Commerce Clause, 41 Tax Law. 103, 120 (1987) ("[a]t common law, one who voluntarily pays an unconstitutional tax, without knowing that the law is unconstitutional, cannot recover the amount paid."). The district court rejected this argument, relying instead on the "modern trend [ ] to infer duress where a taxpayer would be penalized for refusing to pay a tax which it wishes to challenge." We agree with the district court.[19]
 The Supreme Court adopted the "implied duress" rule in Atchison, Topeka & Santa Fe Railway Co. v. O'Connor, 223 U.S. 280, 28586, 32 S.Ct. 216, 216, 56 L.Ed. 436 (1912). This common sense principle--that any taxpayer facing sanctions for nonpayment must be deemed to pay the tax under duress--has been repeatedly embraced by the Supreme Court. See United States v. Mississippi Tax Comm'n, 412 U.S. 363, 368 n. 11, 93 S.Ct. 2183, 2187 n. 11, 37 L.Ed.2d 1 (1973); Ward v. Bd. of County Comm'rs, 253 U.S. 17, 23, 40 S.Ct. 419, 422, 64 L.Ed. 751 (1920); Union Pacific R. Co. v. Public Service Comm'n, 248 U.S. 67, 70, 39 S.Ct. 24, 25, 63 L.Ed. 131 (1918). And, in McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, 496 U.S. 18, 32, 110 S.Ct. 2238, 2248, 110 L.Ed.2d 17 (1990), the Court recently reaffirmed the rule: "We have long held that, when a tax is paid in order to avoid financial sanctions or a seizure of real or personal property, the tax is paid under 'duress' in the sense that the State has not provided a fair and meaningful predeprivation procedure." Id. at 38 n. 21, 110 S.Ct. at 2251 n. 21.
 Here, we believe plaintiffs paid taxes and fees under duress. As the district court noted, the Virgin Islands tax code contains several sanctions against businesses refusing to pay franchise taxes and fees. Plaintiffs would have been subject to monetary penalties and criminal sanctions had they refused to pay the assessments. 13 V.I.C. Secs. 372, 532, 534 and 27 V.I.C. Sec. 307(a). Dilatory payment of franchise taxes subjects a taxpayer to penalties and interest, 13 V.I.C. Sec. 532, and failure to pay taxes for one year or more can result in dissolution of the corporation, 13 V.I.C. Sec. 533(b) and (c). A corporation that fails to pay its franchise taxes cannot commence or maintain any action in court. 13 V.I.C. Sec. 533(a). Willful failure to pay the licensing fee can result in a fine of up to $500 and a term of imprisonment as long as 30 days. 27 V.I.C. Sec. 302. Given these sanctions, we believe plaintiffs paid the filing, licensing, and franchise-tax assessments under implied duress and have standing to challenge 27 V.I.C. Sec. 302 and 13 V.I.C. Secs. 431(a)(1), 531b(b), 531c(b).
 III.
 We begin with plaintiffs' claim that the franchise tax provisions--13 V.I.C. Secs. 531b(b) and 531c(b)--violate IRC Sec. 927(e)(5)(A), which provides that "[n]o tax shall be imposed by any possession of the United States on any foreign trade income [of a FSC] derived before January 1, 1987." See Polychrome Complaint, count II; Camco Complaint, count IV.[20] If Secs. 531b(b) and 531c(b) impose a tax "on foreign trade income," the statutes violate Sec. 927(e)(5)(A) and must be struck down.[21]
 Under the IRC, "foreign trade income" means gross income earned from "foreign trading gross receipts." See 26 U.S.C. Sec. 923(b). A FSC has "foreign trading gross receipts" when it earns income from certain foreign business activities. See 26 U.S.C. Secs. 924(a); 26 C.F.R. Sec. 1.924(a)-1T (1993).[22] For example, when a FSC sells or leases property outside the United States, payments for these dispositions are foreign trading gross receipts. 26 C.F.R. Sec. 1.924(a)-1T(b). When a FSC performs services related to such dispositions (warranty, repair, maintenance service, etc.), any payment for those services is also foreign trading gross receipts. See 26 C.F.R. Sec. 1.924(a)-1T(d)(1).
 The franchise taxes in 13 V.I.C. Secs. 531b(b) and 531c(b) are nominally measured by "non-Virgin Islands trading gross receipts"--a term that also includes gross income from certain business activities occurring outside the Virgin Islands. 13 V.I.C. Sec. 770.[23] Payments on any sale, lease, or disposition of property outside the Virgin Islands constitute non-Virgin Islands trading gross receipts. Id. Payments for services related to these dispositions also constitute non-Virgin Islands trading gross receipts. Id.
 Even a cursory comparison of "foreign trading gross receipts" under the IRC (which is the measure of "foreign trade income") and "non-Virgin Islands trading gross receipts" in the Virgin Islands Code (which is the nominal measure of the franchise taxes) reveals they both include gross income from some of the same business activities. For example, if a Virgin Islands FSC sells a crane to a company operating in France, it earns foreign trading gross receipts, 26 U.S.C. Sec. 924(a)(1), as well as non-Virgin Islands trading gross receipts, 13 V.I.C. Sec. 770.[24] If the FSC performs warranty services on the crane and receives payments, it also earns foreign trading gross receipts, as well as non-Virgin Islands trading gross receipts.
 Although the terms generally include income from some of the same business activities, they are not necessarily coterminous. Foreign trading gross receipts under the IRC is defined as gross income generated by transactions "outside the United States." Non-Virgin Islands trading gross receipts is defined as gross income generated from transactions "outside the Virgin Islands." Thus, if a Virgin Islands FSC sells property in the United States, it would generate non-Virgin Islands trading gross receipts under 13 V.I.C. Sec. 770 but would realize no foreign trade income under Sec. 923(b).[25]
 Even to the extent the terms include the same income (i.e., from transactions in third-party countries), we agree with the district court that "an examination of [Secs. 531b(b) and 531c(b) ] does not reveal them to be [foreign trade] income taxes in disguise." Three factors guide our conclusion. First, Secs. 531b(b) and 531c(b) do not calculate the franchise taxes as a straight percentage of the tax base (e.g., as a percentage of total non-Virgin Islands trading gross receipts). Rather, the statutes establish categories of flat taxes--and the category into which a FSC falls depends on its level of foreign trading gross receipts within broad ranges. Thus, small FSCs with foreign trade income between $2 million and $5 million pay the same tax ($900). Likewise, regular FSCs with substantially different levels of foreign trade income pay the same tax.[26] Second, the flat taxes are de minimis when evaluated as a percentage of non-Virgin Islands trading gross receipts. For example, a company with non-Virgin Islands trading gross receipts of $250 million pays a franchise tax equal to .008% of such receipts; a company with $2 million in gross receipts pays .02%. Third, unlike traditional taxes (e.g., federal income tax), the percentage value of the franchise taxes actually decreases as the tax base increases.[27]
 Therefore, we find that the tax base of the franchise taxes--"non-Virgin Islands trading gross receipts"--contains some foreign trade income but is not exclusively defined thereby. To the extent the terms include the same income, we conclude Secs. 531b(b) and 531c(b) do not operate as a tax "on foreign trade income" within the meaning of IRC Sec. 927(e)(5)(A).
 Plaintiffs claim such a conclusion would elevate form over substance because, in their view, any tax measured by foreign trade income is a tax "on foreign trade income." Because we conclude the franchise taxes are not measured by foreign trade income in any meaningful sense, we disagree. Moreover, we will not adopt a wooden interpretation of Sec. 927(e)(5)(A) given its place in the overall statutory scheme. Congress enacted this section to coordinate the FSC provisions in the IRC with any potential taxes imposed by territorial governments. See IRC Sec. 927(e)(5) (entitled "Coordination with possession taxation"). The prohibition in Sec. 927(e)(5)(A) ensures that FSCs enjoy a period during which they may conduct international trade free from tax burdens on their foreign trade income. See H.Conf.R. 98-861, Deficit Reduction Act of 1984, 98th Cong., 2d Sess., at 977, reprinted in 1984 U.S.C.C.A.N. 1445, 1665 (explaining temporary nature of tax holiday for foreign trade income). Yet, nothing in the provision, nor its legislative history, purports to prohibit the imposition of franchise taxes that are reasonably calculated to value the benefits of domestic incorporation. See 26 U.S.C. Sec. 927(e); Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Tax Reform Act of 1984, 98th Cong., 2d Sess, at 1064 (CCH December 31, 1984). Here, the Virgin Islands legislature has imposed such taxes under schedules that are, as discussed below, reasonably calculated to estimate the value of a FSC as a going concern in the Virgin Islands. We believe Congress did not intend to prohibit such taxes under Sec. 927(e)(5)(A).
 IV.
 Plaintiffs claim Secs. 302(a)(1) (licensing fee for FSCs), 431(a)(1) (filing fee for FSCs), 531b (franchise taxes for small FSCs), and 531c (franchise taxes for other FSCs) violate the Commerce Clause,[28] which provides that "Congress shall have Power ... to regulate Commerce with foreign Nations, and among the several States...."[29] U.S. Const. art. I, Sec. 8.
 The Commerce Clause is an affirmative grant of power to Congress, but the Clause also has "dormant" or "negative" implications. See Cooley v. Board of Wardens, 53 U.S. (12 How.) 299, 13 L.Ed. 996 (1851). The "Dormant Commerce Clause"--one of the "great silences" of the Constitution, see H.P. Hood & Sons, Inc. v. Du Mond, 336 U.S. 525, 534-35, 69 S.Ct. 657, 663, 93 L.Ed. 865 (1949)--"limits the power of the States to erect barriers against interstate trade." Lewis v. BT Investment Managers, Inc., 447 U.S. 27, 35, 100 S.Ct. 2009, 2015, 64 L.Ed.2d 702 (1980).
 A.
 Before considering plaintiffs' claim, we must decide whether the Virgin Islands is bound by Commerce Clause principles. We considered this issue in JDS Realty Corp. v. Government of Virgin Islands, 824 F.2d 256 (3d Cir.1987), vacated and remanded to consider mootness, 484 U.S. 999, 108 S.Ct. 687, 98 L.Ed.2d 640 (1988), vacated as moot, 852 F.2d 66 (3d Cir.1988).
 In JDS, we noted that, because the Virgin Islands is an unincorporated territory, the entire Constitution does not apply to it of its own force. Id. at 259; see also Government of Virgin Islands v. Bodle, 427 F.2d 532, 533 n. 1 (3d Cir.1970) (all provisions of Constitution do not ex proprio vigore become operative in the Virgin Islands). However, we concluded Congress has comprehensive powers to regulate territories under the Territorial Clause, Art. IV, Sec. 3, cl. 2, and that Congress' Commerce Clause powers "are implicit" in that clause. Id. at 260. We find JDS persuasive.[30]
 Under the Territorial Clause, Congress has power to prescribe all "needful Rules and Regulations" for territories. It has been long-settled that congressional enactments supersede any inconsistent territorial regulations. See Late Corp. of Church of Latter-Day Saints v. United States, 136 U.S. 1, 43, 10 S.Ct. 792, 803, 34 L.Ed. 478 (1890) (Congress has "the full and complete legislative authority over the people of the Territories and all the departments of the territorial governments."); Sere v. Pitot, 10 U.S. (6 Cranch.) 332, 336, 3 L.Ed. 240 (1810) ("we find Congress possessing and exercising the absolute and undisputed power of governing and legislating for the territor[ies]."). Congress' broad powers under the Territorial Clause necessarily include the power to regulate commerce with the territories. See Inter-Island Co. v. Territory of Hawaii, 305 U.S. 306, 314, 59 S.Ct. 202, 206, 83 L.Ed. 189 (1938); Norman's on the Waterfront, Inc. v. Wheatley, 444 F.2d 1011, 1019 (3d Cir.1971) (territorial provisions of Sherman Act derive from Congress' powers under Territorial Clause).
 By necessary implication, when territorial enactments affect interstate or foreign commerce--a subject over which Congress has supreme control--those enactments must be scrutinized under Dormant Commerce Clause principles. Any other conclusion would mean "that an unincorporated territory would have more power over commerce than the states possess." JDS, 824 F.2d at 260. Although we need not decide whether the Commerce Clause applies here, we believe Commerce Clause principles are implicit in the Territorial Clause.[31]
 B.
 We now consider whether 27 V.I.C. Sec. 302 and 13 V.I.C. Secs. 431(a)(1), 531b(b) and 531c(b), violate Commerce Clause principles.[32] In Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the Supreme Court articulated the guiding standard:
 [We] have sustained a tax against Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State.
 Id. at 279, 97 S.Ct. at 1079. A tax that fails to meet any one of these four components violates Commerce Clause principles. Id.[33]
 (1)
 The first and fourth components of the Complete Auto Transit test are animated by similar concerns: both "limit the reach of state taxing authority so as to ensure that state taxation does not unduly burden interstate commerce." Quill Corp. v. North Dakota, --- U.S. ----, 112 S.Ct. 1904, 1913, 119 L.Ed.2d 91 (1992) (footnote omitted). By requiring a "substantial nexus" between business activity and the taxing jurisdiction and a "fair relationship" between benefits conferred and taxes imposed, Commerce Clause principles ensure the Virgin Islands imposes only its fair share of taxes on interstate activities. Id. (first and fourth components of Complete Auto Transit informed by "structural concerns about effects of state regulation on the national economy.").
 (a)
 Plaintiffs contend the Virgin Islands lacks a "substantial connection" to their business, arguing that, because their activities take place out-of-territory, the taxes and fees constitute an unconstitutional tax on interstate or foreign commerce. We disagree.
 A tax does not violate the first prong of Complete Auto Transit simply because the tax is levied on "interstate commerce." Although once in vogue in Commerce Clause jurisprudence, see Spector Motor Svc., Inc. v. O'Connor, 340 U.S. 602, 71 S.Ct. 508, 95 L.Ed. 573 (1952); Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265 (1946), this idea has been laid to rest. See Goldberg v. Sweet, 488 U.S. 252, 259, 109 S.Ct. 582, 588, 102 L.Ed.2d 607 (1989) (court has "specifically reject[ed] the view that the states cannot tax interstate commerce."); Complete Auto, 430 U.S. at 289, 97 S.Ct. at 1084 (overruling Spector and Freeman ). The Supreme Court has repeatedly admonished that even "interstate commerce may be made to pay its way." Complete Auto Transit at 281, 97 S.Ct. at 1080. "[T]he entire net income of a corporation, generated by interstate as well as intrastate activities, may be fairly apportioned among the States for tax purposes by formulas utilizing in-state aspects of interstate affairs." Northwestern States Portland Cement Co. v. Minnesota, 358 U.S. 450, 460, 79 S.Ct. 357, 363, 3 L.Ed.2d 421 (1959).
 We believe there is a substantial connection between the Virgin Islands and plaintiffs' interstate operations. Plaintiffs are Virgin Islands corporations, conducting a unitary business "of managing the export operations of its parent corporation ... undertak[ing] to do all of the activities incident thereto...." Polychrome Complaint p 16; Camco Complaint p 18. Under the foreign management provisions of the IRC, plaintiffs must maintain an office in the Virgin Islands and keep various records (which may include account information, quarterly income statements, and annual balance sheets) there. IRC Secs. 924(b)(1)(A), 924(c); see also 13 V.I.C. Sec. 779(b); see generally Advisory Op., No. C880726A, 1989 WL 127338 (N.Y. Dept. Tax. Fin., January 31, 1989) (explaining operations of a Virgin Islands FSC). Any meetings held by the plaintiffs' board of directors must comply with all requirements imposed under Virgin Islands law, 26 C.F.R. Sec. 1.924(c)-1(b), and under its law a FSC's board of directors must hold a meeting in the Virgin Islands at least once annually. See 13 V.I.C. Sec. 779(a)(1). Shareholders must also meet once annually in the Virgin Islands. 13 V.I.C. Sec. 779(a)(2). In light of these requirements,[34] the Virgin Islands clearly has a substantial connection with plaintiffs' unitary business activities, even those occurring out-of-territory. See Amerada Hess Corp. v. Director, 490 U.S. 66, 73, 109 S.Ct. 1617, 1621, 104 L.Ed.2d 58 (1989) (state has substantial connection to "entire net income" of unitary business with business operations in-state).[35]
 (b)
 Plaintiffs also contend the taxes and fees are not "fairly related" to services provided in the Virgin Islands. Again, we disagree. We need not perform a mathematical analysis of the relative benefits afforded and costs assessed on FSCs to uphold the taxes and fees here:
 The relevant inquiry under the fourth prong of the Complete Auto Transit test is not ... the amount of the tax or the value of the benefits allegedly bestowed as measured by the costs the State incurs on account of the taxpayer's activities. Rather ... the fourth prong ... imposes the additional limitation that the measure of the tax must be reasonably related to the extent of the contact....
 Commonwealth Edison v. Montana, 453 U.S. 609, 625-26, 101 S.Ct. 2946, 2957-2958, 69 L.Ed.2d 884 (1981) (footnotes omitted).
 We find nothing unreasonable about the method of calculating the franchise taxes. As noted earlier, the franchise tax provisions consist of schedules for calculating flat taxes. The schedules place small FSCs in two different tax categories and regular FSCs in seven different categories, depending on their gross receipts from foreign transactions--the predominant FSC activity. The provisions then impose a flat tax on all FSCs within each category. Although the dollar amount of the tax increases between the categories, the percentage of the tax actually decreases for FSCs with higher receipts.[36] We believe this scheme reasonably measures the value of the right to conduct business under the auspices of Virgin Islands law and merely ensures each FSC is "shouldering its fair share" of services provided by the Territory. See Commonwealth Edison, 453 U.S. at 627, 101 S.Ct. at 2958.
 We also believe the calculation of the licensing and filings fees is reasonable. Both are flat taxes, levied for the privilege of incorporating and conducting business under Virgin Islands law. These fees are appropriate levies on domestic corporations, even if they choose to make sales and perform services out-of-territory. See Wisconsin v. J.C. Penney, 311 U.S. 435, 444-45, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940) (relationship between tax-base measure and in-state benefits established because of "substantial privilege of carrying on business" within state). Indeed, plaintiffs concede "[w]hatever opportunities, protection and benefits have been afforded FSCs, they are the same as those afforded every garden variety [Virgin Islands] corporation." Just as the Virgin Islands legislature has imposed filing and licensing fees on other corporations, the flat taxes are "fairly related" to the benefits accorded to FSCs under Virgin Islands law.[37]
 Because none of the taxes run afoul of Complete Auto Transit's first or fourth components,[38] we now decide whether the taxes are either unapportioned or discriminatory.
 (2)
 We first consider the filing fees (13 V.I.C. Sec. 431(a)(1)) and licensing fees (27 V.I.C. Sec. 302).
 (a)
 The Supreme Court has established a two-factor test for determining whether a tax is fairly apportioned. See Container Corp. of America v. Franchise Tax Bd., 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983):
 The first ... component of fairness in an apportionment formula is what might be called internal consistency--that is, the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business' income being taxed. The second and more difficult requirement is what might be called external consistency--the factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated.
 Id. at 169, 103 S.Ct. at 2942.[39] Apportionment under these principles need not eradicate the potential of any double taxation. See Container Corp., 463 U.S. at 170-71, 103 S.Ct. at 2943. Any apportionment must only provide a fair method for taxing only income with a nexus to the taxing-jurisdiction. Id.
 Plaintiffs claim the filing and licensing fees are "obnoxious to the Commerce Clause" under these principles. We disagree. These fees apply only to FSCs incorporated in the Virgin Islands, and there is no threat of multiple taxation under the internal consistency rule. See Goldberg v. Sweet, 488 U.S. 252, 261, 109 S.Ct. 582, 589, 102 L.Ed.2d 607 (1989) ("the internal consistency test focuses on the text of the challenged statute and hypothesizes a situation where other states have passed an identical statute."). If every jurisdiction in which FSCs are incorporated adopts similar fees, each FSC will be liable only for one tax--the tax imposed by its home state. See id.
 Neither do the filing and licensing fees violate external consistency principles. In order to establish this violation, plaintiffs must prove "by clear and cogent evidence" that the fees are " 'out of all proportions to the business transacted ... in th[e taxing jurisdiction]' ... or ha[ve] 'led to a grossly distorted result.' " Trinova Corp. v. Michigan Dept. of Treasury, 498 U.S. 358, 380, 111 S.Ct. 818, 832, 112 L.Ed.2d 884 (1991) (quoting Moorman Mfg. Co. v. Bair, 437 U.S. 267, 274, 98 S.Ct. 2340, 2345, 57 L.Ed.2d 197 (1978) (internal citations omitted)). Plaintiffs offer nothing to prove that a one-time fee of $400 for incorporation or an annual business-licensing fee of $100 is disproportionate to business activity a FSC conducts in the Virgin Islands or has led to any economic distortions. See Goldberg, 488 U.S. at 262, 109 S.Ct. at 589 (under external consistency test, court must "examine the in-state business activity which triggers the taxable event and the practical or economic effect of the tax on that interstate activity."). We conclude such fees are extremely unlikely to dissuade FSCs from incorporating in the Virgin Islands and operating their business under the protections of Virgin Islands law. Although it does not form the basis of our holding, the fact that the Virgin Islands has been the venue of choice for 80% or more of the world's FSCs strongly supports our conclusion. See Blake A. Bernet, The Foreign Sales Corporation Act: Export Incentive for U.S. Business, 25 Int'l Law 223 (1991) (82% of FSCs are incorporated in the U.S. Virgin Islands); Edward E. Thomas, Revenue Letter to Commissioner Wetzler, 91 Tax Notes Int'l 45 (Nov. 6, 1991) (4,000 FSCs, representing 80% of FSCs world-wide, are incorporated in the U.S. Virgin Islands).
 (b)
 Plaintiffs also maintain the licensing fees discriminate against interstate and foreign commerce because the fees imposed on FSCs are higher than those imposed on other Virgin Islands corporations. Under the plain terms of 27 V.I.C. Sec. 302, licensing fees imposed on FSCs do not exceed those placed on businesses involved primarily on in-territory activity. In fact, the opposite is true: FSCs pay lower licensing fees than, among many others, bakers ($200), florists ($150), general manufacturers (between $1,000 and $150, depending on the manufactured good), golf course operators ($150), movie theaters ($500), night club operators ($700), and pharmacies ($300)--all of which are likely to have substantial in-territory business activity. 27 V.I.C. Sec. 302. We see no discrimination against interstate or foreign commerce under Sec. 302.
 Plaintiffs also claim the filing fee authorized by Sec. 431(a)(1) discriminates against interstate or foreign commerce. Although it imposes higher fees on FSCs, we believe plaintiffs misapprehend the strictures of the Commerce Clause by focusing solely on the dollar amount of the fees.
 The Supreme Court has held that a tax impermissibly discriminates in violation of the Clause if it expresses the taxing authority's "preference for domestic commerce over foreign commerce," Kraft Gen. Foods v. Iowa Dep't of Revenue, --- U.S. ----, ----, 112 S.Ct. 2365, 2370, 120 L.Ed.2d 59 (1992), by disadvantaging foreign corporations or goods, or by restricting the free flow of goods between states. See American Trucking Ass'n, Inc. v. Scheiner, 483 U.S. 266, 287, 107 S.Ct. 2829, 2842, 97 L.Ed.2d 226 (1987) (axle tax that effectively encouraged truckers to operate in-state violated Commerce Clause); Westinghouse Elec. Corp. v. Tully, 466 U.S. 388, 400, 104 S.Ct. 1856, 1864, 80 L.Ed.2d 388 (1984) (tax provision that effectively encouraged corporation to move shipping operations in-state violated Commerce Clause); Maryland v. Louisiana, 451 U.S. 725, 756, 101 S.Ct. 2114, 2134, 68 L.Ed.2d 576 (1981) (state cannot impose tax on natural gas brought into state while exempting local users from the tax). The filing fees imposed on FSCs under Sec. 431(a)(1) do not depend on where a FSC does its business. Nor is there a prohibition in the Corporations and Associations law against FSC's engaging in commerce in the Virgin Islands.[40] Indeed, a FSC engaging in substantial in-territory business and a FSC engaging in substantial out-of-territory business pay the same filing fee under Sec. 431(a)(1).[41]
 Moreover, where differential treatment of two categories of companies "results solely from the differences between the nature of their business, not from the location of their activities," the tax does not offend Commerce Clause principles. Amerada Hess Corp. v. Director, 490 U.S. 66, 78, 109 S.Ct. 1617, 1624, 104 L.Ed.2d 58 (1989). Here, the statute imposes higher filing fees on FSCs because they are a special category of corporations, created in conjunction with federal income tax law and subject to special advantages under the Virgin Islands tax law. See 13 V.I.C. Secs. 774-78, 780. The intent of the Virgin Islands FSC scheme, as the district court concluded, is to encourage the formation of FSCs in the territory, see Bernet, supra; Thomas, supra, as evidenced by the many tax advantages in the Virgin Islands code--which FSCs may contractually guarantee until 1997. Modestly higher filing fees do not violate Commerce Clause principles when their purpose and effect is to encourage interstate and foreign commerce.[42]
 Also significant is that Sec. 431(a)(1) imposes higher filing fees on corporations electing "to be considered an exempt company as defined in chapter 14 of this title." Chapter 14 of the Virgin Islands code, entitled "Exempt Companies," creates a special class of corporations to "promote [ ] the growth and development of the economy of the Virgin Islands by creating opportunities and incentives for international investment in the Territory." 14 V.I.C. Sec. 850.[43] Toward this end, chapter 14 provides some of the same tax exemptions to "exempt companies" as provided to FSCs--and like the FSCs provisions, the benefits are not available to companies engaged primarily in in-territory business. See 13 V.I.C. Secs. 855-58; see generally Carey R. D'Avino, The Contours of the U.S. Virgin Islands Exempt Companies Act and New Code Section 934(b), 87 Tax Anal. Tax Notes Today 52-13 (March 18, 1987). In essence then, the Virgin Islands imposes higher filing fees on FSCs and "Exempt Companies" because they are sui generis among Virgin Islands corporations, subject to special regulations and tax exemptions. Both schemes are clearly intended to encourage foreign commerce and rationally structured toward that end. We see no discrimination here.[44] We conclude that neither 27 V.I.C. Sec. 302 nor 13 V.I.C. Sec. 431(a)(1) violates Commerce Clause principles because both are fairly apportioned and nondiscriminatory.
 (3)
 We now consider whether the franchise taxes (13 V.I.C. Secs. 531b(b) and 531c(b)) violate the apportionment and discrimination components of Complete Auto Transit.
 As we have explained, any tax--including one imposed on, or measured by, gross receipts from interstate and foreign commerce--must be apportioned to reflect only that business attributable to intrastate commerce. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977).[45] The Virgin Islands franchise tax, as the government seems to concede in its brief, contains no formula for apportioning gross receipts from out-of-territory sales.[46] Rather, every transaction in which a FSC engages outside the Virgin Islands (i.e., any disposition of property or performance of certain services) results in non-Virgin Islands trading gross receipts. Sections Secs. 531b and 531c require each corporation to determine its total amount of non-Virgin Islands trading gross receipts for the taxable year, look to the tax tables, and pay the applicable franchise tax. For example, if a FSC receives payments under a long-term lease of its property--even if the lease was negotiated outside the Virgin Islands and the lessor resides out-of-territory--the payments constitute non-Virgin Islands trading gross receipts and are part of the franchise-tax base. Moreover, every time a FSC receives payment for maintenance or warranty service on that out-of-territory property, it realizes non-Virgin Islands trading gross receipts and must pay franchise taxes thereon. Thus, the amount of tax depends on gross sales volume from out-of-territory transactions, and nothing limits the scope of the tax to the activities (i.e., sales, negotiations, services) occurring in the Virgin Islands that contributed to those transactions.
 The absence of an apportionment formula, Secs. 531b(b) and 531c(b) may result in disproportionate tax liability.[47] By basing a FSC's franchise taxes on its "non-Virgin Islands trading gross receipts"--i.e., its gross income from the sale, exchange, or other disposition "outside the Virgin Islands" of imported property--the provision ensures that the tax base for companies selling an identical amount of goods is different depending on where they sell their goods. See Westinghouse Electric, 466 U.S. at 400 n. 9, 104 S.Ct. at 1864 n. 9 ("similarly situated corporations ... would face different tax assessments in New York depending on the location from which the [corporation] shipped its exports."). If goods are sold within the Virgin Islands, the tax base is lower; if the goods are sold abroad, the tax base is greater.[48] Accordingly, a FSC's tax liability decreases as it "moves a greater percentage of its [sales] activities" into the Virgin Islands. Id.
 We agree with the government, however, that any discrimination resulting from Secs. 531b(b) and 531b(c) is not constitutionally fatal. While, standing alone, the franchise taxes may impinge on interstate or foreign commerce, we cannot evaluate these taxes in isolation. Rather, we must assess their constitutionality "in light of [the taxes'] actual effect considered in conjunction with other provisions of [the Virgin Islands'] tax scheme." Maryland v. Louisiana, 451 U.S. 725, 756, 101 S.Ct. 2114, 2134, 68 L.Ed.2d 576 (1981).
 The Supreme Court has recognized that a "compensatory tax"--i.e., one imposed in lieu of other taxes which "discloses no purpose to discriminate" and "in substance does not do so"--does not offend Commerce Clause principles. General American Tank Car Co. v. Day, 270 U.S. 367, 373, 46 S.Ct. 234, 235, 70 L.Ed. 635 (1926). The Court applied this principle, in Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814 (1937). There, Washington imposed a 2% sales tax on all goods sold in the state. Because, as a sales tax, the tax promoted purchases outside the state (at least to the extent adjoining states imposed no such tax on purchases), Washington also imposed a 2% "compensating tax" on the use of all goods in the state--exempting those goods that had already been subject to a sales tax in Washington or any other state. A contractor who brought its equipment into Washington from out-of-state challenged these provisions under the Commerce Clause, claiming they burdened interstate and foreign commerce. The Supreme Court disagreed, explaining that "the burden borne by the [contractor because of the use tax] is balanced by an equal burden where the sale is strictly local." 300 U.S. at 584, 57 S.Ct. at 527.
 The Court explained Henneford and its progeny in Boston Stock Exchange v. State Tax Commission, 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977):
 In all the use-tax cases, an individual faced with a choice of an in-state or out-of-state purchase could make that choice without regard to the tax consequences. If he purchased in State, he paid a sales tax; if he purchased out of State but carried the article back for use in State, he paid a use tax of the same amount. The taxes treated both transactions in the same manner.
 Id. at 332, 97 S.Ct. at 608. Under this reasoning, states can impose taxes on interstate commerce to create equality between in-state and out-of-state transactions--to make the choice between in-state and out-of-state commerce tax neutral. When a tax equalizes burdens on interstate and intrastate commerce, the tax is a constitutionally valid, compensating tax. See, e.g., Henneford, 300 U.S. at 584, 57 S.Ct. at 527; General American Tank Car, 270 U.S. at 373, 46 S.Ct. at 235.
 Here, the government contends--and the district court held--the franchise taxes equalize burdens on in-territory and out-of-territory commerce in light of the exemptions in 13 V.I.C. Secs. 773-77. According to the District Court:
 the crucial point is that, although franchise taxes are paid in proportion to out-of-territory business activity, other taxes on that same activity are not paid, including some income taxes. This amounts to a legitimate tradeoff rather than impermissible discrimination.
 The district court concluded that, because the legislature advantaged interstate commerce in one part of its tax scheme, it was constitutionally entitled to tax interstate transactions under the franchise-tax provisions. We agree.
 The Virgin Islands legislature has provided some powerful incentives for FSCs to make out-of-territory sales--incentives that more than offset any burden imposed by the franchise taxes. Virgin Islands corporations are ordinarily required to pay income taxes on an apportioned amount of their income under the IRC. See 48 U.S.C. Sec. 1397. However, a FSC's foreign trade income is exempt from taxation until 1997. 13 V.I.C. Sec. 773. This is true even through Congress specifically authorized taxation on all foreign trade income after 1986. See 26 U.S.C. Sec. 927(e)(5)(A).
 Virgin Islands corporations must also, absent an exemption, pay a tax on all gross receipts
 from trade, business, commerce or sales, and the value accruing from the sale of tangible personal property or services, or both, including rentals, fees and other involvements, however designated, without any deduction on account of the cost of the property sold, the cost of materials used, labor cost, royalties, taxes, interest or discount paid, and any other expenses whatsoever.
 
 
 [33]
 V.I.C. Sec. 43(b). This tax must be "computed in proportion to the extent of the business done in the Virgin Islands with respect to the pertinent transaction." 33 V.I.C. Sec. 41. Therefore, absent an exemption, FSCs would be obligated to pay the 4% gross receipts tax on every out-of-territory transaction to the extent there was related in-territory business activity involved in the transaction (i.e., contract negotiations, sales meetings, accounting records, etc.). Yet, under 13 V.I.C. Sec. 774, all non-Virgin Islands trading gross receipts are exempt from Sec. 43(a)'s gross receipts tax, even if those receipts derive from business activity in the Virgin Islands[49]
 Virgin Islands corporations must also pay excise taxes "on all articles, goods, merchandise or commodities manufactured in or brought into the Virgin Islands for personal use in a business, for processing or manufacturing or for any other business use or purpose." 33 V.I.C. Sec. 42(a). Under the FSC provisions, all export property held by a FSC is exempted from excise fees. 13 V.I.C. Sec. 775.[50] Such property is also exempt from the customs duties otherwise imposed by 33 V.I.C. Sec. 525. 13 V.I.C. Sec. 776.
 Finally, U.S. citizens and corporations are ordinarily required to pay taxes to the Virgin Islands on income derived from sources within the Virgin Islands. See IRC Secs. 871(a)(1) and 881. Tax liability applies to any income (such as dividends) received from sources within the Virgin Islands attributable to business activity outside the Virgin Islands. See id. The tax on such income is a flat 10%, 33 V.I.C. Sec. 541, and the distributing company is subject to withholding for the tax, 33 V.I.C. Sec. 542. Under the FSC provisions, however, FSC shareholders that are citizens of, reside in, or are companies of the U.S. are exempt from the 10% tax. 13 V.I.C. Sec. 777. The FSC is also exempt from any withholding. 13 V.I.C. Sec. 778.[51]
 As we have noted, these benefits are available only to FSCs that conduct at least 95% of their business outside the Virgin Islands. 13 V.I.C. Sec. 771(2). We find no discrimination here, in intention or effect, against interstate or foreign commerce. We conclude Secs. 531b(b) and 531c(b) are valid components of a tax scheme that places no burdens on--and actually provides substantial advantages to--the conduct of interstate and foreign commerce. Therefore, we will affirm the judgment of the district court.
 V.
 The government claims the district court improperly granted summary judgment to Polychrome on count III and to Camco on count V, holding that regulation 530-3(a) must be invalidated.[52] Regulation 530-3(a) is an "interpretive regulation," which can be upheld as a reasonable interpretation of the legislative mandate if it harmonizes the statute's language, origin, and purpose.[53] See United States v. Vogel Fertilizer Co., 455 U.S. 16, 25, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982). "[O]ur starting point is to attempt reconciliation of the seemingly discordant statute[ ] and regulation[ ]. Only where that outcome is not possible do we disregard the regulation[ ]." Lavallee Northside Civ. Ass'n v. Coastal Zone Mgt., 866 F.2d 616, 623 (3d Cir.1989).
 Regulation 530-3(a) interprets 13 V.I.C. Sec. 770, which defines "non-Virgin Islands trading gross receipts" for franchise-tax purposes. As we have explained, non-Virgin Islands trading gross receipts, which arise from a broad range of activities, are the measure of a FSC's franchise tax liability. The phrase means:
 the gross receipts of any FSC which are:
 (1) from the sale, exchange, or other disposition of non-Virgin Islands export property for direct use, consumption, or disposition outside the Virgin Islands;
 (2) from the lease or rental of non-Virgin Islands export property for use by the lessee outside the Virgin Islands;
 (3) for services which are related and subsidiary to:
 (A) any sale, exchange, or other disposition of non-Virgin Islands export property by any such corporation;
 (B) any lease or rental of non-Virgin Islands export property for use by the lessee outside the Virgin Islands;
 (4) for engineering or architectural services for construction projects located (or proposed to be location) outside the Virgin Islands; or
 (5) for the performance of managerial services for an unrelated FSC in furtherance of the production of non-Virgin Islands trading gross receipts as described in items (1), (2), or (3) of this definition; provided that item (5) shall not apply to a FSC for any taxable year unless at least fifty percent (50%) of its gross receipts for such taxable year are derived from activities described in items (1), (2), or (3) of this definition.
 
 
 [13]
 V.I.C. Sec. 770
 When it enacted the FSC legislation, the Virgin Islands legislature provided that "[t]he Director [of Revenue for the Virgin Islands] shall promulgate all rules as are necessary for the implementation of this chapter." 13 V.I.C. Sec. 781. The Director promulgated Regulation Sec. 530-3(a), which provides
 For the purpose of calculating the franchise tax liability of a commission FSC, non-Virgin Islands trading gross receipts shall include non-Virgin Islands trading gross receipts generated by export transactions in which such FSC acts as a commission agent.
 When a commission FSC sells goods for its parent, the regulation requires that the entire value of the sale constitutes non-Virgin Islands trading gross receipts, not just the commission earned thereon.
 The district court invalidated Sec. 530-3(a), holding that "[a]ccording to the plain reading of the statute, a commission FSC's gross receipts are those monies received as commissions, rather than those generated by the underlying sales transactions." Central to the court's conclusion was the phrase "services which are related and subsidiary to ... any sale, exchange, [etc.], of non-Virgin Islands export property" in 13 V.I.C. Sec. 770. The court concluded that, as commission agents, commission FSCs perform "related and subsidiary" services to any disposition of property and that commissions for those services are "non-Virgin Islands trading gross receipts," not the principal from the sale or other transaction. We disagree.
 Section 770 does not address the proper method for calculating the gross receipts of a commission FSC. Nor does it expressly limit gross receipts to commissions only. Moreover, a commission agent's services, in procuring a sale or disposition of property, are not "related and subsidiary" to the ultimate disposition. "Related" means "connected or allied," Black's Law Dictionary 1158 (5th ed. 1979), and "subsidiary" means "of secondary importance," see id. at 1280. A service that is "related and subsidiary" to the disposition of property is one connected with, but of secondary importance to, the property. Maintenance or warranty services on the property are examples of "related and subsidiary" services. Payments for these services constitute "non-Virgin Islands trading gross receipts." Commissions, which are payments from a third-party to the transaction, are not payments for "related and subsidiary" services.
 The IRC supports this interpretation. As we have explained, the definition of "foreign trading gross receipts," under IRC Sec. 924, is the source of the definition for "non-Virgin Islands trading gross receipts" in 13 V.I.C. Sec. 770. So too, Sec. 924 includes payments from "related and subsidiary" services in its definition. IRC Sec. 924(a)(3). Under the regulations, however, commissions are not payments from "related and subsidiary" services. Rather, the services must be "related and subsidiary" to the property involved in the transaction, 26 C.F.R. Sec. 1.924(a)-1T(3) & (4) (1993):
 (3) Services which may be related to a sale or lease of export property include but are not limited to warranty service, maintenance service, repair service, and installation service.... (i) [A related service must be] of the type customarily and usually furnished with the type of transaction in the trade or business in which the sale or lease arose....
 (4) Services are subsidiary to the sale or lease only if it is reasonably expected at the time of the sale or lease that the gross receipts from all the related services furnished by the FSC ... will not exceed 50 percent of the sum of the gross receipts from the sale or lease and the gross receipts from related services furnished by the FSC....
 Thus, "related and subsidiary" services under the IRC are services to the export property and of secondary importance, in terms of dollar value, to the underlying disposition. In light of the intimate connection between the IRC and the Virgin Islands FSC scheme, and the legislature's clear attempt to track the language of IRC Sec. 924 specifically, we conclude commissions are not payments for the performance of "related and subsidiary" services within the meaning of 13 V.I.C. Sec. 770.
 No other language in Sec. 770 suggests that commissions are the appropriate measure of non-Virgin Islands trading gross receipts for commission FSCs. Thus, the only remaining issue is whether regulation 530-3(a) is a reasonable interpretation of Sec. 770 in light of its purpose. See National Muffler Dealers Assn. v. United States, 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979) (when statutory term ambiguous, must examine administrative interpretation in light of statute's origin and purpose).[54]
 Section 770 defines the base on which FSCs pay franchise taxes. A common sense view of the statute counsels in favor of including the full value of the sale, exchange, or other disposition, not merely the commission, in a commission FSC's gross receipts. Because a FSC's commission rate is a relatively small percentage of the profits from any disposition, commission FSC's could effectively ensure they would pay franchise taxes only at the minimum rate. Even in the aggregate, their commissions in a given year are unlikely equal to the level of non-Virgin Islands trading gross receipts necessary to incur tax liability under the higher brackets of the franchise-tax schedules.[55] Because the legislature did not create a tax that would never be paid, see generally 2A Norman J. Singer, Sutherland Stat. Constr. Sec. 46.06, at 119 (5th ed. 1992) (no statute should be construed so as to render a part inoperative), regulation 530-3(a) is a reasonable reflection of the franchise-tax provisions' purpose.
 Moreover, by including the total receipts from a disposition in a commission FSCs non-Virgin Islands gross receipts, regulation 530-3(a) also reconciles Sec. 770 with its source. Again, Sec. 770 closely tracks the language of "foreign trading gross receipts" in IRC Sec. 924(a). Unlike the Virgin Islands scheme, the IRC contains a sub-definition of "gross receipts" to be read in tandem with "foreign trading gross receipts." In part, that definition provides:
 [i]n the case of commissions on the sale, lease, or rental of property, the amount taken into account for purposes of this subpart as gross receipts shall be the gross receipts on the sale, lease, or rental of the property on which such commissions arose.
 IRC Sec. 927(b)(2). Thus, regulation 530-3(a) brings the definition of non-Virgin Islands trading gross receipts in line with the IRC's definition.
 In sum, because regulation 530-3(a) harmonizes the language, origin, and purpose of the Virgin Islands FSC scheme, we believe it is valid.[56]
 VI.
 For these reasons, we will affirm the district court's judgment on counts I and II of Polychrome's complaint and counts I-IV of Camco's complaint. We will reverse the judgment, however, on count III of Polychrome's complaint and count V of Camco's complaint, and we will remand to the district court to enter judgment on those two counts in favor of the government.
 
 
 [1]
 Although plaintiffs requested a permanent injunction, we understand them to be making a facial attack on the statutes, and we will treat it as such
 
 
 [2]
 Under the DISC legislation, a corporation electing DISC-status must satisfy certain organizational and operational requirements. Notably, 95% of its gross receipts in any tax year must have been earned from the sale, exchange, or disposition of export property. If it satisfied these conditions, the DISC was exempt from taxation and its shareholders were taxed on only a portion of the DISCs accumulated income. See generally Brown-Forman Corp. v. C.I.R., 955 F.2d 1037, 1038-39 (6th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 87, 121 L.Ed.2d 50 (1992); 12 Mertens, The Law of Federal Taxation, Sec. 45F.01 (1992)
 
 
 [3]
 Because the DISC legislation granted tax advantages to U.S. corporations based on exports, several GATT signatories believed the DISC legislation created illegal export subsidies. See Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, 98th Cong., 2d Sess., at 1041-42 (CCH 1985); see also John M. Gray, Recent Developments: Foreign Sales Corporations Replace Domestic International Sales Corporations, 26 Harv.Int'l L.J. 293 (1985)
 
 
 [4]
 Companies may still operate as DISCs, but now may defer less of their accumulated income and pay interest charges on the income actually deferred. See IRC Sec. 995(f)(1); Mertens, supra note 2, at Sec. 45F.153
 
 
 [5]
 A country is qualified for FSC incorporation if it satisfies the requirements of IRC Secs. 927(e)(3), which requires participation in a bilateral or multilateral exchange of information agreement with the United States or a tax treaty that permits the exchange of information. Every U.S. possession--including the U.S. Virgin Islands--is eligible for FSC incorporation except Puerto Rico. IRC Sec. 927(d)(5); see generally 26 C.F.R. Sec. 1.921-2(a)(i) (1993)
 
 
 [6]
 The exempted portion of the FSCs income is treated as "foreign source income which is not effectively connected with the conduct of trade or business with the United States." See I.R.C. Sec. 921(a). The IRC contains three alternative transfer pricing rules to calculate the portion of the FSC's income that is exempt from taxation. See IRC Sec. 925. The rules are, however, not relevant to the issues presented on appeal
 
 
 [7]
 "Carrying charges" are added charges imposed by the FSC or a related supplier for the cost of shipping goods, or as unstated interest. See 26 C.F.R. Secs. 1.921-3T(f)(ii), 1.927(d)-1(a) (1993)
 
 
 [8]
 Although individuals paying taxes under the mirror code provision are normally not required to pay taxes to the United States, the FSC provisions in the IRC provide that no tax imposed by Secs. 921-27 must be "covered over" (i.e., are not payable to) the Virgin Islands government. See IRC Sec. 927(e)(5)(C)
 
 
 [9]
 This exemption was congressionally mandated through 1986, see 26 U.S.C. Sec. 927(e)(5)(A); however, the Virgin Islands legislature extended it until 1997 in an effort to attract more FSCs. D'Avino, supra, 85 Tax Notes Today 1-63. Under applicable regulations, "Foreign trade income" means income which is:
 (1) foreign trade income as defined in Sections 921-927 of the Internal Revenue Code; and
 (2) gross income of [a] FSC attributable to non-Virgin Islands trading gross receipts;
 
 
 [13]
 V.I.C. Regs. Sec. 770-1(c). We explain the definition of "non-Virgin Islands trading gross receipts" below
 
 
 [10]
 Investment income and carrying charges are exempt only to the extent the FSC is not entitled to a foreign tax credit in the U.S. for Virgin Islands taxes imposed on such income. 13 V.I.C. Sec. 773(b). Under current rules, Virgin Islands-based FSCs are not eligible to claim the foreign tax credit in the United States on this income. See 26 C.F.R. Sec. 1.901.1(g)(5) (1992). Thus, all interest and carrying charges are exempt from taxation
 
 
 [11]
 13 V.I.C. Sec. 778 exempts the FSC from withholding taxes for that portion of the distributions
 
 
 [12]
 The fee for non-FSC corporations is calculated with reference to the number of shares of capital stock. The minimum filing fee for non-FSCs, regardless of the amount of their capital stock, is $75. See 13 V.I.C. Sec. 431(a)(1)
 
 
 [13]
 This provision ensures that potential-FSCs do not attempt to circumvent the higher filing fees by filing as a non-FSC and then converting. See 10 V.I. Op. A.G. 42 (Dec. 13, 1984)
 
 
 [14]
 The license entitles a business "to carry on [its] specified business or occupation from the designated place of business...." 27 V.I.C. Sec. 301(d)
 
 
 [15]
 A "small FSC" is a FSC with expected gross trading receipts of $5,000,000 or less. The term is used under both the IRC and the Virgin Islands code, and small FSCs are subject to other requirements not relevant here. See IRC Sec. 922(b); 26 C.F.R. Sec. 1.921-2(b) (1993)
 Non-Virgin Islands
 Gross Receipts But not
 greater than more than Minimum tax
 $ 0 $ 10,000,000 $ 1,000
 10,000,000 20,000,000 2,500
 20,000,000 50,000,000 5,000
 50,000,000 100,000,000 10,000
 100,000,000 250,000,000 15,000
 250,000,000 500,000,000 20,000
 500,000,000 -- 25,000
 
 
 [16]
 Formerly, 13 V.I. Regs. Sec. 531a-1
 
 
 [17]
 The district judge granted the government's summary judgment motion on the Polychrome complaint before acting on the Camco complaint. Polychrome took an immediate appeal from the district court's judgment, but we dismissed the appeal by Order dated March 24, 1992, because we lacked appellate jurisdiction until the district court rendered a final decision on the Camco complaint
 
 
 [18]
 The district court had jurisdiction under 48 U.S.C. Sec. 1612(c) (1988) and 4 V.I.C. Sec. 32, and, as discussed below, infra note 52, our appellate jurisdiction is proper under 28 U.S.C. Sec. 1291 (1988). On review of a grant of summary judgment, we apply the same test as the district court. Public Interest Research of N.J. v. Powell Duffryn Terminals, Inc., 913 F.2d 64, 76 (3d Cir.1990), cert. denied, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991)
 
 
 [19]
 We have plenary review of the district court's judgment on standing. Hospital Council of W. Pa. v. City of Pittsburgh, 949 F.2d 83, 86 n. 1 (3d Cir.1991)
 
 
 [20]
 Plaintiffs also contend the franchise tax provisions run afoul of 48 U.S.C. Sec. 1574(c) (1988), under which the Virgin Islands legislature has power to enact only laws "not inconsistent" with U.S. law. See Polychrome Complaint, count II; Camco Complaint, count IV. This contention merely restates their argument under Sec. 927(e)(5). If the franchise taxes violate Sec. 927(e)(5), they are inconsistent with U.S. law and run afoul of Sec. 1574(c). If they are not inconsistent with Sec. 927(e)(5), we do not see, and plaintiffs do not identify, any federal statute contrary to the franchise taxes
 
 
 [21]
 Although plaintiffs seek a refund of franchise taxes they paid from 1985 to the present, we find their attack considerably more limited. Plaintiffs concede that in 1985 they paid franchise taxes according to the minimum rates set forth in 13 V.I.C. Secs. 531b(a) and 531c(a), not the scheduled rates under 13 V.I.C. Secs. 531b(b) and 531c(b). Thus, for 1985, plaintiffs did not pay, and cannot recover, franchise taxes under 13 V.I.C. Secs. 531b(b) and 531c(b). Moreover, Congress specifically authorized the Virgin Islands legislature to tax foreign trade income beginning in 1987. 28 U.S.C. Sec. 927(e)(5)(A) ("[n]o tax shall be imposed by any possession of the United States on any foreign trade income derived before January 1, 1987.") (emphasis added); see H.R. 861, 98th Cong., 2d Sess. 977 (1984) ("the conference agreement will allow U.S. territories to impose tax on income of FSCs that arises after January 1, 1987 ..."), reprinted in 1984 U.S.C.C.A.N. 697, 1445, 1665. Thus, the only tax year at issue is 1986
 
 
 [22]
 Section 924(a) provides, in part:
 (a) ... "foreign trading gross receipts" means the gross income of any FSC which are--
 (1) from the sale, exchange, or other disposition of export property,
 (2) from the lease or rental of export property for use by the lessee outside the United States,
 (3) for services which are related and subsidiary to--
 (A) any sale, exchange, or other disposition of export property by such corporation, or
 (B) any lease or rental of export property described in paragraph (2) by such corporation,
 (4) for engineering or architectural services for construction projects located (or proposed for location) outside the United States, or
 (5) for the performance of managerial services for an unrelated FSC or DISC in furtherance of the production of foreign trading gross receipts described in paragraphs (1), (2), or (3).
 IRC Sec. 924(a). "Gross receipts" means "the total receipt from the sale, lease, or rental of property held primarily for sale, lease, or rental in the ordinary course of trade or business," as well as "gross income from all other sources." IRC Sec. 927(b)(1).
 
 
 [23]
 Chapter 5, in which the franchise-tax provisions appear, cross-references the definition of "non-Virgin Islands trading gross receipts" contained in chapter 7, 13 V.I.C. Sec. 770
 
 
 [24]
 Assuming, of course, the FSC held the crane "primarily for sale, lease, or rental in the ordinary course of business." See IRC Sec. 927(b)(1)
 
 
 [25]
 We are mindful of the practicalities of these two schemes. The IRC contemplates that FSCs will sell most of their property outside the United States (i.e., FSCs get no tax benefits to the extent they sell property in the United States). Moreover, the Virgin Islands provisions contemplate that FSCs will sell most of their property outside the Virgin Islands (i.e., no tax benefits for in-territory sales). Thus, FSCs have incentives to conduct most of their activities neither in the United States nor in the Virgin Islands--and income generated from activities in third-party countries gives rise to both foreign trade income (26 U.S.C. Sec. 923(b)) and non-Virgin Islands gross trading receipts (13 V.I.C. Sec. 770). Yet, there is nothing on this record to indicate whether--or the extent to which--plaintiffs engage in business activities in the United States. In fact, plaintiffs concede "it is altogether possible that a [Virgin Islands] FSC might engage in business in another state [in the U.S.]...." It is conceivable, then, that plaintiffs have non-Virgin Islands trading gross receipts that is not also foreign trade income under IRC Sec. 923(b)
 
 
 [26]
 Regular FSCs pay franchise taxes as follows:
 Non-Virgin Islands
 Gross Receipts But not
 greater than more than Tax
 $ 0 $ 10,000,000 $ 1,000
 10,000,000 20,000,000 2,500
 20,000,000 50,000,000 5,000
 50,000,000 100,000,000 10,000
 100,000,000 250,000,000 15,000
 250,000,000 500,000,000 20,000
 500,000,000 -- 25,000
 
 
 [13]
 V.I.C. Sec. 531c
 
 
 [27]
 For example, the tax on non-Virgin Islands trading gross receipts for regular FSCs is as follows:
 Non-Virgin Islands
Gross Receipts Tax as a percentage
between between of base
10,000,000--20,000,000 .025%--.0125%
20,000,000--50,000,000 .025%--. 01%
50,000,000--100,000,000 . 02%--. 01%
100,000,000--250,000,000 .015%--.006%
250,000,000--500,000,000 .008%--.004%
500,000,000 or more .005% or less
 
 
 [28]
 Polychrome and Camco both claim the franchise taxes violate the Commerce Clause. See Polychrome Complaint, count I; Camco Complaint, count III. Additionally, Camco claims the licensing and filing fees also violate the Commerce Clause. See Camco Complaint, counts II & III
 
 
 [29]
 We note that Congress has authorized the Virgin Islands legislature to impose the kind of taxes at issue here: "[t]axes and assessments on property and incomes, internal-revenue taxes, license fees, and service fees may be imposed and collected, and royalties for franchises, privileges, and concessions granted may be collected for the purposes of the Government of the Virgin Islands...." 48 U.S.C. Sec. 1406i; see Puerto Rico v. The Shell Co., 302 U.S. 253, 261, 58 S.Ct. 167, 171, 82 L.Ed. 235 (1937) (Organic Act gives territories legislative power with respect to local matters "as broad and comprehensive as language [can] make it."). The only question here is whether the manner in which these taxes is imposed offends Commerce Clause principles
 
 
 [30]
 Because JDS was vacated as moot, we are not bound by our earlier holding there
 
 
 [31]
 Neither Sakamoto v. Duty Free Shoppers, Ltd., 764 F.2d 1285 (9th Cir.1985), cert. denied, 475 U.S. 1081, 106 S.Ct. 1457, 89 L.Ed.2d 715 (1986), nor United States v. Husband R., 453 F.2d 1054, 1059 (5th Cir.1971), cert. denied, 406 U.S. 935, 92 S.Ct. 1785, 32 L.Ed.2d 136 (1972), which held that the Commerce Clause does not apply to U.S. territories, change our conclusion. Neither court considered whether Commerce Clause principles were implicit in the Territorial Clause. The only court to have considered this precise issue held: "prohibitive effect [of the Commerce Clause] is binding on the Commonwealth [of Puerto Rico] through Territorial Clause ... as an implied corollary of congressional powers thereunder." Sea-Land Svcs., Inc. v. Municipality of San Juan, 505 F.Supp. 533, 545 (D.P.R.1980) (citation omitted). The Court of Appeals for the First Circuit has recently held the Commerce Clause applies, of its own force, to the Commonwealth of Puerto Rico. See Trailer Marine Transport Corp. v. Rivera Vazquez, 977 F.2d 1, 6-9 (1st Cir.1992)
 
 
 [32]
 In evaluating 27 V.I.C. Sec. 302 and 13 V.I.C. Sec. 431(a), we address only the provisions in those statutes implicating FSCs. Moreover, although we evaluate the challenged provisions under Commerce Clause principles, we emphasize that, in this case, those principles are applicable to the Virgin Islands only through the Territorial Clause. See Part IVA, supra
 
 
 [33]
 In granting summary judgment to the government on plaintiffs' Commerce Clause challenge, the district court held
 [t]he FSC taxation system does not discriminate against out-of-territory businesses doing business in the territory, as is the usual case in a Commerce Clause challenge. Rather, the challenged taxing system applies to companies incorporated in the Virgin Islands.
 This reasoning suggests the Virgin Islands tax scheme is exempt from Commerce Clause scrutiny because it applies only to in-territory corporations. We disagree. The Supreme Court has eschewed a "mechanical" application of Commerce Clause principles and has refused to exempt state regulations from "the strictures of the Commerce Clause" merely because the regulations affect in-state activities or entities. See Commonwealth Edison Co. v. Montana, 453 U.S. 609, 614, 101 S.Ct. 2946, 2952, 69 L.Ed.2d 884 (1981) ("The Court has ... long since rejected any suggestion that a state tax or regulation affecting interstate commerce is immune from Commerce Clause scrutiny because it attaches only to a 'local' or intrastate activity."). The Court has repeatedly sustained Commerce Clause challenges to state taxes brought by corporations chartered under the laws of the taxing jurisdiction. See Evco v. Jones, 409 U.S. 91, 93 S.Ct. 349, 34 L.Ed.2d 325 (1972) (per curiam) (sustaining Commerce Clause challenge, brought by New Mexico corporation, to New Mexico levy on gross receipts); New Jersey Telephone Co. v. Tax Board, 280 U.S. 338, 344, 50 S.Ct. 111, 112, 74 L.Ed. 463 (1930) (sustaining Commerce Clause challenge, brought by New Jersey corporation, to New Jersey franchise tax); Galveston, Harrisburg & San Antonio Ry. Co. v. Texas, 210 U.S. 217, 228, 28 S.Ct. 638, 640, 52 L.Ed. 1031 (1908) (in striking down gross receipts tax under Commerce Clause, court states "it does not matter that the plaintiffs in error are domestic corporations ..."). We have also subjected state regulations to Commerce Clause scrutiny, even when the regulations apply to, and are challenged by, corporations chartered under the laws of the regulating state. See Old Bridge Chemicals v. N.J.D.E.P., 965 F.2d 1287, 1289 (3d Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 602, 121 L.Ed.2d 538 (1992).
 
 
 [34]
 The IRC also requires FSCs to keep their principal bank account outside the United States. IRC Sec. 924(c)(2). We note that some Virgin Islands FSCs keep their account in the Virgin Islands to fulfill this requirement. See Advisory Op., No. C880726A, 1989 WL 127338 (N.Y.Dept.Tax.Fin., January 31, 1989) (Virgin Islands FSC that keeps primary bank account in Virgin Islands)
 
 
 [35]
 For these reasons, plaintiffs' assertion they are not "doing business" in the Virgin Islands (so as to be subject to the licensing fee under 27 V.I.C. Sec. 302) is meritless
 
 
 [36]
 See supra note 27
 
 
 [37]
 Indeed, plaintiffs concede they chose to incorporate in the Virgin Islands because of "geographic location, the American flag [i.e., its status as a U.S. territory] and courts, English language and other such factors." In return, the Virgin Islands is entitled to impose a fair measure of taxation
 
 
 [38]
 Because of this conclusion, we find plaintiffs' claim the taxes and fees violate the Due Process Clause of the Fourteenth Amendment, applicable to the Virgin Islands under 48 U.S.C. Sec. 1561 (1988), without merit. The first and fourth components of the Complete Auto Transit test "encompass[ ] as well the Due Process requirement that there be 'a "minimal connection" between the interstate activities and the taxing state, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise.' " Trinova Corp. v. Michigan Dept. of Treasury, 498 U.S. 358, 111 S.Ct. 818, 828, 112 L.Ed.2d 884 (1991) (quoting Mobil Oil Corp. v. Commissioner of Taxes, 445 U.S. 425, 436-37, 100 S.Ct. 1223, 1231, 63 L.Ed.2d 510 (1980)). Clearly, a FSC incorporated in the Virgin Islands has connections with the Virgin Islands "substantial enough to legitimate the [territory's] exercise of power" over it. Quill Corp. v. North Dakota, --- U.S. ----, ----, 112 S.Ct. 1904, 1913, 119 L.Ed.2d 91 (1992); id. at ----, 112 L.Ed.2d at 1914 n. 7 (every tax passing muster under Commerce Clause is also valid under Due Process)
 
 
 [39]
 Any tax--including the filing fees, licensing fees, and franchise taxes at issue here--must be evaluated against these principles regardless of its denomination. See American Trucking Assns., Inc. v. Scheiner, 483 U.S. 266, 294-96, 107 S.Ct. 2829, 2846, 97 L.Ed.2d 226 (1987) ("In our more recent decisions we have rejected th[e] somewhat metaphysical approach to the Commerce Clause that focused primarily on the character of the privilege rather than the practical consequences of the tax.") (footnote omitted)
 
 
 [40]
 The Virgin Islands code, in fact, envisions that FSCs will engage in at least some in-territory business. See 13 V.I.C. Secs. 774 (FSCs not exempted from gross receipts tax for receipts earned from in-territory business), 775 (FSC property held for sale within Virgin Islands not exempt from excise)
 
 
 [41]
 The only difference between such FSCs is that one engaging in substantial in-territory business will be ineligible for the benefits established by 13 V.I.C. Secs. 772-78, 780. See 13 V.I.C. Sec. 771
 
 
 [42]
 For the same reasons, we reject plaintiffs' claim that the fees violate the Equal Protection Clause, made applicable to the Virgin Islands under 48 U.S.C. Sec. 1561. The Equal Protection Clause requires only that differential tax treatment among corporations bear a rational relationship to a legitimate state purpose. See Western & Southern L.I. Co. v. Bd. of Equalization, 451 U.S. 648, 657, 101 S.Ct. 2070, 2077, 68 L.Ed.2d 514 (1981); see also Southern R. Co. v. Greene, 216 U.S. 400, 417, 30 S.Ct. 287, 291, 54 L.Ed. 536 (1910) (classifications among corporations for tax purposes permissible under Equal Protection only if they bear reasonable and just relation to legitimate purpose). We agree with the district court that the government's objective in creating its FSC scheme was to attract FSCs. See Bernet, supra (discussing efforts of Virgin Islands to entice FSCs to incorporate there); Thomas, supra (same). We find this an indisputably legitimate objective. Moreover, plaintiffs have offered nothing to show the treatment of FSCs and non-FSCs actually results in differential taxation when considering the tax code as a whole. In the absence of such evidence, we agree with the district court that--because FSCs "pay added fees" but "are exempt from other taxes"--the tax scheme relates rationally to the government's objective
 
 
 [43]
 The Virgin Islands legislature enacted Chapter 14, like the FSC provision in the Virgin Islands code, in conjunction with a special provision in the IRC. That provision, IRC Sec. 934(b), allows the legislature to exempt from taxation "income derived from sources within the Virgin Islands or income effectively connected with the conduct of a trade or business within the Virgin Islands." Section 934(b) is an exception to Sec. 934(a), which, as described above, generally prohibits the Virgin Islands from reducing the tax liability of any taxpayer. IRC Sec. 934(a)
 
 
 [44]
 In light of our conclusion that the filing fees under Sec. 431(a)(1) do not violate Commerce Clause principles, plaintiffs' claim concerning the penalty provision in Sec. 431(a)(1)--under which companies that file as non-FSCs and later convert to FSC-status must pay the $400 filing fee plus a $100 penalty--is meritless. The Revised Organic Act of the Virgin Islands, 48 U.S.C. Sec. 1574 (1988), provides that "[t]he legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation...." Under this power, the Virgin Islands legislature is free to adopt reasonable economic policies to promote public welfare and to enforce those policies by appropriate legislation, see Smith v. Government of Virgin Islands, 329 F.2d 135, 144 (3d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1886, 12 L.Ed.2d 747 (1964), as long as the legislation does not violate a constitutional or congressional provision applicable to the Virgin Islands. See Brow v. Farrelly, 994 F.2d 1027, 1035 n. 6 (3d Cir.1993). Here, the Virgin Islands has created a penalty to prevent abuse of the FSC provisions. Without it, would-be FSCs could reap the benefits of FSC-status without paying higher filing fees by filing articles of incorporation as ordinary companies and later electing to be FSCs. See 10 V.I.Op.A.G. 42. The penalty is a legitimate exercise of the territory's police power and does not burden interstate or foreign commerce in purpose or effect
 
 
 [45]
 The government claims "there is no requirement that transactional taxes such as franchise taxes be apportioned among various states." We disagree. The Supreme Court has explicitly rejected per se rules based on "draftsmanship" and "semantic difference[s]" between statutes. See Complete Auto Transit, 430 U.S. at 285, 97 S.Ct. at 1082. Instead, the Court looks past a tax's denomination to examine its practical effect in light of economic reality. Id. at 284-87, 97 S.Ct. at 1082-1083; see, e.g., Trinova Corp. v. Michigan Dept. of Treasury, 498 U.S. 358, 374, 111 S.Ct. 818, 829, 112 L.Ed.2d 884 (1991) (" 'A tax on sleeping measured by the number of pairs of shoes you have in your closet is a tax on shoes.' ") (quoting Jenkins, State Taxation of Interstate Commerce, 27 Tenn.L.Rev. 239, 242 (1960)). As the Court observed in Westinghouse Electric Corp. v. Tully, 466 U.S. 388, 104 S.Ct. 1856, 80 L.Ed.2d 388 (1984), these principles apply equally to franchise taxes:
 The franchise tax is a tax on the income of a business from its aggregated business transactions. It cannot be that a State can circumvent the prohibition of the Commerce Clause against burdensome taxes on out-of-state transaction by burdening those transactions with a tax that is levied in the aggregate--as is the franchise tax--rather than on individual transactions.
 Id. at 404, 104 S.Ct. at 1866; see generally 2 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law 2nd Sec. 13.5(e) (1992) ("when a business is engaged in both interstate and intrastate commerce, the taxing state must limit application of its annual franchise tax to that portion of the value of the business conducted within the state."); Laurence H. Tribe, American Constitutional Law Sec. 6-19 & 6-20, at p. 465 (2d ed. 1988) (although state cannot constitutionally tax gross receipts derived from out-of-state sales by local corporations, such taxation is permissible "if the method by which the tax is measured apportions the tax burden in conformity with a formula that rationally relates the amount of the tax to the fraction of interstate activity taking place in the taxing state.").
 
 
 [46]
 Although we concluded in Part III, supra, that the franchise taxes are only nominally measured by gross receipts, we believe our conclusion--although sufficient to answer the challenge under Sec. 927(e)(5)--does not remove the taxes from the strictures of the Commerce Clause. See supra note 44. The question of whether Secs. 531b(b) and 531c(b) impose a tax on "foreign trade income" is not the same as whether the taxes are properly apportioned under the Commerce Clause
 
 
 [47]
 We recognize that "fair apportionment" and "nondiscriminatory" are not "synonymous terms" under Complete Auto Transit. See Westinghouse Elec., 466 U.S. at 399, 104 S.Ct. at 1863. A fairly apportioned tax may nevertheless be discriminatory. Id. However, we believe the discriminatory impact of the franchise taxes necessarily results from the lack of an apportionment formula in Secs. 531b(b) and 531c(b). See Container Corp., 463 U.S. at 171, 103 S.Ct. at 2943 ("the anti-discrimination principle has not in practice required much in addition to the requirement of fair apportionment")
 
 
 [48]
 To some extent, the discriminatory impact of the taxes is minimized under the tax schedules in Secs. 531b(b) and 531b(c). As explained above, see supra pages 1533-34, the schedules use gross-income categories for calculating the taxes, but the individual categories encompass a broad spectrum of income levels. Thus, a FSC will pay franchise taxes of $2,500 if it has $10,000,000 in non-Virgin Islands trading gross receipts, but it can realize an additional $10,000,000 without incurring additional tax liability. Moreover, as a FSC realizes more non-Virgin Islands trading gross receipts and is placed in higher tax categories, the percentage value of the tax also decreases. See supra note 27
 
 
 [49]
 Plaintiffs claim Sec. 774 is an illusory benefit because non-Virgin Islands gross receipts are not subject to the gross receipts tax notwithstanding Sec. 774. We disagree. The Virgin Islands cannot tax unapportioned non-Virgin Islands trading gross receipts under Sec. 43(a). See Pan American World Airways v. Government of Virgin Islands, 459 F.2d 387, 394 (3d Cir.1972); Port Construction Co. v. Government of Virgin Islands, 359 F.2d 663, 665 (3d Cir.1966). However, the Virgin Islands could tax such receipts in proportion to in-territory activity occurring during the underlying transactions. See Pan American, 459 F.2d at 394. For example, if a FSC sells goods to a British company but there were business dealings--negotiations, meetings, phone calls, correspondence, money exchange, movement of goods--in the Virgin Islands, a tax could be levied in proportion to the in-territory activity. 33 V.I.C. Sec. 41. Because of 13 V.I.C. Sec. 774, non-Virgin Islands trading gross receipts are exempted from the gross receipts tax in Sec. 43(a) even if Virgin Islands business activity gave rise to those receipts
 
 
 [50]
 Plaintiffs claim Sec. 775 is illusory because export property is otherwise exempt from excise taxes under 33 V.I.C. Sec. 42(e)(8). However, Sec. 42(e)(8)'s exemption applies to such property only if the purchaser "take[s] delivery and actual possession outside the Virgin Islands." If goods are sold under a contract negotiated in the Virgin Islands, the purchaser is deemed to have taken possession in the Virgin Islands and the exemption does not apply. See 6 V.I.Op.A.G. 38 (June 17, 1968). Thus, Sec. 775's exemption is broader than the exemption under Sec. 42(e)(8), exempting all export property no matter where it is, in fact, delivered or sold and regardless of where the contract of sale is negotiated
 
 
 [51]
 As we have noted, each FSC has a right to transform these statutory entitlements into contractual guarantees, under 13 V.I.C. Sec. 780. The contracts, which the Lieutenant Governor must provide within 30 days of a request, specify that benefits will not be "impair[ed] or limit[ed]" and that the government's obligation for benefits is personal to the signatory FSC in consideration of compliance with all rules, laws and regulations and current payment of all taxes and fees
 
 
 [52]
 Although we expressed doubt, by way of a request for additional briefing, that the district court's order was final within the meaning of 28 U.S.C. Sec. 1291, we agree with the parties that the order sufficiently disposes of the factual and legal issues and that any unresolved issues are sufficiently "ministerial" that there would be no likelihood of further appeal. See Parks v. Pavkovic, 753 F.2d 1397, 1401-02 (7th Cir.), cert. denied, 473 U.S. 906, 105 S.Ct. 3529, 87 L.Ed.2d 653 (1985). We exercise plenary review over the district court's interpretation of 13 V.I.Regs. Sec. 530-3(a) and 13 V.I.C. Sec. 770. Brow v. Farrelly, 994 F.2d 1027, 1032 (3d Cir.1993)
 
 
 [53]
 Although we owe less deference to an interpretive regulation, such as Sec. 530-3(a), than to one promulgated under a specific grant of authority, see Rowan Cos., Inc. v. United States, 452 U.S. 247, 253, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981), we will uphold it if it reasonably interprets the statute in light of its language, history, and purpose
 
 
 [54]
 In National Muffler, the Court held that, in determining whether a regulation carries out the legislative mandate, a court must consider, among other relevant factors, whether the regulation was a "substantially contemporaneous" construction, the amount of time the regulation has been in effect, the consistency of the agency's interpretation. 440 U.S. at 477, 99 S.Ct. at 1307. Regulation 530-3(a) was promulgated within two years of the final version of Sec. 770 and has been consistently in effect for the intervening seven years
 
 
 [55]
 The commission attributable to a FSC is determined under the IRC's regulations, which are promulgated pursuant to a specific statutory directive. See IRC Sec. 925(b)(1). Under the regulations, the FSC's commission may be determined under any one of three "transfer pricing rules" in IRC Sec. 925(a). See 26 C.F.R. Sec. 1.925(a)-1T(d)(2). For example, under the first rule, the commission is deemed to be 1.83% of the total foreign gross trading receipts derived from the transaction. Thus, if a commission FSC sold one billion dollars worth of goods in a given year, its non-Virgin Islands trading gross receipts--if determined only by the amount of its aggregate commissions--would be $1,830,000. This amount would qualify it as a "small FSC" in the lowest franchise-tax bracket, and it would pay only $400
 
 
 [56]
 Because we will reverse the district court's judgment regarding regulation 530-3, we need not address plaintiffs' claims that the court failed to provide for interest on tax refunds, failed to include attorneys' fees and costs, and failed to order reimbursement for the proper tax years. Under our holding, plaintiffs are obviously entitled to no refunds, attorneys' fees, or costs